UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOE E. WILLIAMS | CIVIL ACTION |
| VERSUS | NO: 11-1588 |
| RECOVERY SCHOOL DISTRICT, ET AL. | SECTION: R(2) |

### ORDER AND REASONS

Defendant Recovery School District moves to dismiss plaintiff Joe E. Williams's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  For the following reasons, the Court DISMISSES Williams's complaint in its entirety.

**I.   BACKGROUND**

In August 2006, defendant Recovery School District ("RSD") hired plaintiff Joe E. Williams as a math teacher.[2]  Williams's last assignment was at Clark High School.  On October 2, 2009, Williams submitted a request for extended sick leave due to extreme discomfort caused by spinal stenosis.  Williams contends that he gave RSD extensive medical records documenting his condition.  During the time he was applying for the leave, Williams, a 63-year-old African American, alleges that "White

---

[1]   R. Doc. 7.

[2]   R. Doc. 14 at ¶11.

representatives of the Defendant on several occasions [told him] that he should 'retire.'"[3] After approving Williams's extended leave request for the period from October 5, 2009 through November 2, 2009, Williams alleges that he received a letter on November 17, 2009 informing him that "he had been discharged for excessive use of sick leave and job abandonment."[4] Williams contends that as a result of this treatment, he was denied equal employment opportunities on the basis of his race, age, and disability.[5]

    Williams also alleges that RSD subjected him to various retaliatory acts. Williams had filed EEOC Charge No. 461-2008-02016 against RSD on July 28, 2008, alleging that RSD had violated the Americans with Disabilities Act when it refused to rehire Williams after he experienced a flare-up of spinal stenosis.[6] Williams withdrew the charge when RSD rehired him. After RSD rehired him, Williams alleges that he was subjected to several retaliatory acts by RSD, including failing to inform him when the 2009-2010 school year started, telling Williams he

---

    [3]    *Id.*

    [4]    *Id.*

    [5]    *Id.* at ¶12-¶13.

    [6]    *Id.* at ¶11.

should retire, and investigating Williams for abuse of sick leave, despite Williams's documentation verifying his condition.[7]

Williams filed this action on July 6, 2011, after securing a Right to Sue letter from the Equal Employment Opportunity Commission ("EEOC"). William alleges violations based on Title VII of the Civil Rights Act, 42 U.S.C. § 2000, *et seq.*, Title I of the Civil Rights Act of 1991, Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111-12117, the ADA Amendments Act of 2008, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-34. Williams also requests a permanent injunction ordering RSD to cease engaging in discriminatory employment practices and to institute policies that provide equal employment opportunities for qualified individuals.[8] On October 10, 2011, RSD filed a motion to dismiss pursuant to Federal Rule 12(b)(6).[9] RSD contends (1) that it is not a juridical entity capable of being sued; (2) that Williams fails to state a claim upon which relief can be granted; (3) that Williams's earlier charge is too remote in time to support a retaliation claim; and (4) that Williams fails to state a claim for injunctive relief. Williams then filed an amended complaint, which added as defendants the Louisiana Department of Education

---

[7]   *Id.*

[8]   *Id.* at A-B.

[9]   R. Doc. 7.

("LDOE") and the Board of Elementary and Secondary Education ("BESE").[10] Williams also elaborated on his discrimination claims. RSD maintains that Williams's amended complaint suffers the same defects as his original complaint and that the ADA and ADEA claims against LDOE and BESE are barred by the Eleventh Amendment.[11]

## II.  STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1960 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S.Ct. at 1949.

---

[10]    R. Doc. 14.

[11]    R. Doc. 19.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiff's claim is true. *Id.* It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Id.* In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 257. If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed. *Twombly*, 550 U.S. at 555; *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007).

**III. DISCUSSION**

**A.   Recovery School District**

At the outset, defendants argue that RSD is not a juridical person capable of being sued. Federal Rule of Civil Procedure 17(b) provides in relevant part:

> The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of the individual's domicile . . . . In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held . . . .

Fed. R. Civ. P. 17(b).  This Court will look to Louisiana law in order to determine the suability of the Recovery School District.  Article 24 of the Louisiana Civil Code provides in relevant part: "A juridical person is an entity to which the law attributes personality, such as a corporation or a partnership."  La. Civ. Code Ann. art 24.

The Louisiana Supreme Court has set forth a framework within which to determine the suability of an entity.  *See Roberts v. Sewerage and Water Board*, 634 So.2d 341 (La. 1994)(Sewerage and Water Board Commission was third party capable of being sued under state workers compensation law).  The court in *Roberts* stated:

> [T]he determination that must be made in each particular case is whether the entity can appropriately be regarded as an additional and separate government unit for the particular purpose at issue.  In the absence of positive law to the contrary, a local government unit may be deemed to be a juridical person separate and distinct from other government entities, when the organic law grants it the legal capacity to function independently and not just as the agency or division of another governmental entity.

*Id.* at 346-47 (emphasis added).  In concluding that the Sewage and Water Board was a "third person" capable of being sued, the *Roberts* court focused its analysis on the independent management, financing, and operations of the board.  *See id.* at 352.  By contrast, in *City Council of Lafayette v. Bowen*, 649 So.2d 611, 616 (La. App. 1994), the Louisiana Third Circuit Court of Appeal held that under the *Roberts* analysis, the City Council of

Lafayette, organized pursuant to a home rule charter, had no capacity to sue or be sued. The court of appeal affirmed the trial court, which found "no authority, Constitutional, Statutory, or via Home Rule Charter that authorizes the Lafayette City Council to institute, of its own motion, a lawsuit[.]" *Bowen*, 649 So.2d at 613 (internal quotations omitted).

Although the Louisiana Supreme Court has not yet spoken on this issue, the Louisiana Fourth Circuit Court of Appeal held that the Recovery School District was not a juridical person capable of suing or being sued under the *Roberts* analysis. *Tankerson v. Vallas*, 34 So.3d 355, 357 (La. App. 2010). The court noted that both the Department of Education and the State Board of Elementary and Secondary Education are a "body corporate" under the Louisiana Revised Statutes. *Id.*; La. Rev. Stat. 36:642 (Department of Education); La. Rev. Stat. 17:1 (Board of Elementary and Secondary Education). The court also noted that while Louisiana Revised Statute 17:51 "makes a *parish* school board a 'body corporate with power to sue[,]' [t]he statute authorizing the RSD (La. Rev. Stat. 17:1990) contains no equivalent language . . . ." *Id.* at 357-58. For these reasons, the court held that "the RSD does not function independently of the DOE and BESE as it is not a body corporate capable of being sued or suing directly." *Id.* at 358.

7

Moreover, RSD's organizing statute clearly states that RSD "shall be administered by the state Department of Education, subject to the approval of the State Board of Elementary and Secondary Education." La. Rev. Stat. § 17:1990(A)(2). This power structure further contrasts RSD with parish school boards, which "must comply with State laws . . . [but] are autonomous political creatures that are separate and distinct entities providing the framework for education in their respective parishes." *Hamilton v. City of Natchitoches*, 903 So.2d 1247, 1250 (La. App. 2005). Here, however, RSD is by statute an "intermediate educational unit" that is not capable of self-administration. La. Rev. Stat. § 17:1990(B)(1)(a). Accordingly, the Court finds that the RSD is not a juridical person capable of suing or being sued under the *Roberts* analysis. *See Adams v. Orleans Parish Recovery Sch. Dist.*, No. 11-30751, 2012 WL 612777, at *1 (5th Cir. Feb. 27, 2012)(noting that "RSD is not an entity that can sue or be sued").

Because the RSD is not a juridical person under Louisiana law, Williams's claims against it must be dismissed.

**B.   Title VII**

   *1.   Race Discrimination*

Title VII of the 1964 Civil Rights Act provides that "[i]t shall be an unlawful employment practice for an employer . . . to

discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a).  In order to state a claim for race discrimination under Title VII, a plaintiff must allege "(1) that he is a member of a protected class, (2) that he was qualified for the position, (3) that he suffered an adverse employment action, and (4) that others similarly situated were more favorably treated." *Durkin v. U.S. Postal Serv.*, 54 Fed. Appx. 794, 2002 WL 31845206, at *1 (5th Cir. Dec. 5, 2002) (citing *LaPierre v. Benson Nissan*, 86 F.3d 444, 448 (5th Cir. 1996)).

Here, Williams's amended complaint falls short of stating a claim for race discrimination under Title VII.  Williams's amended complaint states that he is a "Black employee"[12] and that RSD's employment practices "adversely affect[ed] his status as an employee because of his race, Black."[13]  Aside from these allegations, and assuming that he was qualified for this position, at no point does Williams allege that others similarly situated were more favorably treated. *See Palma v. New Orleans City*, 115 Fed. Appx. 191, 195 (5th Cir. 2004)(affirming motion to dismiss for failure to state a claim when plaintiff failed to

---

[12]    R. Doc. 14 at ¶11.

[13]    *Id.* at ¶12.

establish "that the adverse employment decision was adversely applied to him"); *Davis v. Mem'l Med. Ctr. of E. Tex.*, 129 F.3d 609, 1997 WL 681068, at *2 (5th Cir. Oct. 7, 1997)(affirming motion to dismiss for failure to state a claim when plaintiff did not claim "that after being discharged, her employer replaced her with a person who is not a member of a class protected by Title VII or that others who are not members of a protected class remained in similar positions"). *Cf. Hardy v. Pinkerton Sec. Servs.*, 20 F.3d 469, 1994 WL 122171, at *1 (5th Cir. Mar. 28, 1994)(plaintiff's complaint of disparate treatment on the basis of race was adequate when he alleged that he was fired for sleeping on the job but a white applicant who engaged in similar behavior was not). Moreover, Williams's conclusory allegation that RSD discriminated against him on the basis of his race "is a legal conclusion that the court is not required to accept and does not suffice to prevent a motion to dismiss." *Richards v. JRK Prop. Holdings*, 405 Fed. Appx. 829, 831 (5th Cir. 2010). Accordingly, the Court finds that Williams fails to state a claim and his Title VII claim for race discrimination must be dismissed.

   2.   *Retaliation*

Title VII also makes it unlawful for an employer to discriminate against an employee who has opposed an employment

practice made unlawful by Title VII.  42 U.S.C. § 2000e-3(a). In order to state a retaliation claim, a plaintiff must allege "(1) that [he] engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action."  *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002).  "Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII."  *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003)(internal quotations omitted).  An adverse employment action is "one that 'a reasonable employee would have found . . . [to be] materially adverse, which in [the retaliation] context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Puente v. Ridge*, 324 Fed. Appx. 423, 429 (5th Cir. 2009)(quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).  An employment action is not materially adverse if it amounts to only "petty slights or minor annoyances that often take place at work and that all employees experience."  *Burlington*, 548 U.S. at 68.

Here, Williams states that he filed EEOC Charge No. 461-2008-02016 on July 28, 2008 against RSD.  Following the filing and subsequent withdrawal of this charge, Williams alleges that

he was "subject to various retaliatory acts" by RSD.  These acts included failing to notify him of the start date of the 2009-2010 school year, telling him he should retire, and investigating him for abuse of sick leave.[14]  Without more, these acts do not rise to the level of materiality required by *Burlington* because they would not dissuade a reasonable employee from making a charge of discrimination.  *See, e.g., Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009)(changing locks on the doors and being chastised by co-workers constituted the type of petty slights and minor annoyances that the Supreme Court held to be not actionable); *Smith v. Harvey*, 265 Fed. Appx. 197, 201-02 (5th Cir. 2008)(investigating employee for unusually high phone bill did not constitute materially adverse employment action).  *Cf. Grande v. Decrescente Distrib. Co., Inc.*, 370 Fed. Appx. 206, 212 (2d Cir. 2010)(threatening to terminate employment and doubling employee's workload constituted materially adverse employment actions); *Prince-Garrison v. Md. Dept. of Health and Mental Hygiene*, 317 Fed. Appx. 351, 355 (4th Cir. 2009)(employee "was threatened with suspension at least three times and with termination twice, and despite later remedial action, there remains an inference of retaliation for engaging in a protected act").

---

[14] R. Doc. 14 at ¶11.

Williams also alleges that his termination on November 17, 2009 for excessive sick leave constitutes a retaliatory act. In order to successfully state a claim of retaliation, though, Williams must allege a causal connection between his protected activity and the adverse employment actions. In some cases, causation may be inferred from a close temporal proximity between a protected activity and an adverse employment action. *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007). But, "cases that accept mere temporal proximity . . . as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the temporal proximity must be 'very close.'" *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Here, roughly sixteen months passed between when Williams filed his first EEOC charge and when RSD terminated his employment. Under Fifth Circuit law, Williams cannot rely solely on temporal proximity of this length to establish his *prima facie* case. *See Raggs*, 278 F.3d at 472 (finding five-month period between protected activity and adverse employment action did not establish *prima facie* retaliation claim). Thus, the Court finds that Williams fails to allege a causal connection between his protected activity and the adverse employment action.

For the foregoing reasons, the Court dismisses Williams's Title VII claim of retaliation.

**C.   ADA and ADEA**

Williams asserts ADA and ADEA claims against the Louisiana Department of Education and the Board of Elementary and Secondary Education. The Court finds, however, that it lacks subject matter jurisdiction over these claims. The Eleventh Amendment bars a state's citizens from suing the state or its agencies in federal court. *Cozzo v. Tangipahoa Parish Council-President Government*, 279 F.3d 273, 280 (5th Cir. 2008). When a state agency is the named defendant, the Eleventh Amendment bars suit unless the state has waived its immunity. *Id.* at 280-81. By statute, Louisiana has refused to waive its sovereign immunity and expressly bars suit against Louisiana or its agencies in any court other than a Louisiana state court. *See* La. Rev. Stat. 13:5106.

Moreover, the Supreme Court has held that neither Title I of the ADA nor the ADEA abrogates sovereign immunity. Suits brought under Title I of the ADA, such as Williams's, are barred by the Eleventh Amendment. *Bd. of Trustees of Alabama v. Garrett*, 531 U.S. 356, 360 (2001). The ADA Amendments Act of 2008, Pub. L. 110-235, does not change this analysis. *See, e.g., Dube v. Tex. Health & Human Servs. Comm'n*, No. SA-11-CV-354-XR, 2011 WL 3902762, at *2-*3 (W.D. Tex. Sept. 6, 2011)(holding that claims for monetary damages brought under the ADA Amendments Act were barred by the Eleventh Amendment). *See also Goodnow v. Okla.*

14

*Dept. of Human Servs.*, No. 11-CV-54-GKF-FHM, 2011 WL 4830183, at *1 (N.D. Okla. Oct. 12, 2011)("[T]he ADAAA is devoid of language purporting to negate the constitutional limitation upon the authority of Congress to abrogate sovereign immunity recognized in *Garrett*."). With respect to the ADEA, although Congress attempted to abrogate sovereign immunity in enacting the ADEA, the Supreme Court subsequently held that "[t]he ADEA's purported abrogation of the States' sovereign immunity is . . . invalid." *Kimel v. Fla. Bd. Of Regents*, 528 U.S. 62, 91 (2000).

The two entities Williams names as defendants, the Louisiana Department of Education and the Board of Elementary and Secondary Education, are arms of the state for purposes of sovereign immunity. *See* La. Const. Art. VIII, Sec. 2 (Board of Elementary and Secondary Education appoints a superintendent of education who is the administrative head of the Department of Education and who implements the policies of the BESE); *Bd. of Elementary and Secondary Ed. v. Nix*, 347 So.2d 147, 150 (La. 1977)(The BESE "is given the constitutional power to determine educational policy for the public schools of the state"). *See also Swindle v. Livingston Parish Sch. Bd.*, 655 F.3d 386, 399 (5th Cir. 2011)(LDOE and BESE are entitled to sovereign immunity); *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 285 (5th Cir. 2002)(finding that LDOE and BESE waived sovereign immunity). Accordingly, any

claims against LDOE or BESE for monetary damages must be dismissed.

**D.   Injunctive Relief**

Williams also requests injunctive relief.  First, he asks the Court to enjoin defendants "from engaging in employment practices which discriminate on the basis of race and retaliation," as well as age and disabilities.[15]  He also asks the Court to order defendants "to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individual[s], and which eradicate the effects of its past and present unlawful discrimination policies."[16]

The availability and scope of injunctive relief is dictated by the nature of the violation.  *See Doe v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004)(an injunction must be narrowly tailored "to remedy the specific action which gives rise to the order").  As the foregoing discussion demonstrates, Williams has not pleaded any viable claims of statutory violations.  Without a "specific action," Williams's request for injunctive relief must be dismissed.  *See Pajooh v. Harmon*, 82 Fed. Appx. 898, 899 (5th

---

[15]   R. Doc. 14 at 5.

[16]   *Id.* at 6.

Cir. 2003)(upholding the denial of injunctive relief when plaintiff failed to state a claim).

Even if Williams had sufficiently pleaded a statutory violation, his requested injunction is fatally overbroad. "[T]he scope of injunctive relief is dictated by the extent of the violation established, and an injunction must be narrowly tailored to remedy the specific action necessitating the injunction." *Fiber Sys. Int'l., Inc. v. Roehrs*, 470 F.3d 1150, 1159 (5th. Cir. 2006)(internal quotations omitted). Federal Rule of Civil Procedure 65(d) requires specificity in framing injunctions "so that those enjoined will know what conduct the court has prohibited." *Meyer v. Brown & Root Constr. Co.*, 661 F.2d 369, 373 (5th Cir. 1981). The parties must "be able 'to interpret the injunction from the four corners of the order' as required by Rule 65(d).'" *Seattle-First Nat. Bank v. Manges*, 900 F.2d 795, 800 (5th. Cir. 1990)(citing *Fed. Trade Comm'n v. Sw. Sunsites, Inc.*, 665 F.2d 711, 724 (5th Cir. 1982)).

The Fifth Circuit considered and rejected a preliminary injunction similar to Williams's in a Title VII action. In *McClain v. Lufkin Indus., Inc.*, the district court had issued an injunction that included "such vague directives as 'cease and desist all racially biased assignment and promotion practices,' 'create and implement a program to ensure that black employees receive an equitable proportion of promotions,' and 'take all

17

necessary steps to remedy the effects of past discrimination.'" *McClain*, 519 F.3d 264, 283-84 (5th Cir. 2008).  In vacating this order, the Fifth Circuit held that "[a]n order framed in these broad generalities fails to afford notice to [the defendant] of its proscribed or required conduct and is therefore unenforceable." *Id.* at 284.  Here, the Court finds that the injunctive relief Williams requests suffers from the same fatal overbreadth and vagueness problems as the injunction in *McClain* did.

Because Williams fails to state a claim for any statutory violation, and because the injunction he requests is fatally overbroad, the Court dismisses his claim for injunctive relief.

**IV.   CONCLUSION**

For the foregoing reasons, the Court DISMISSES with prejudice all claims against RSD because RSD is not a juridical person capable of suing or being sued under Louisiana law.  The Court DISMISSES with prejudice the ADA and ADEA claims against the Louisiana Department of Education and the Board of Elementary and Secondary Education based on sovereign immunity principles.  The Court DISMISSES with prejudice Williams's claim for injunctive relief and his Title VII claims of race discrimination and retaliation against LDOE and BESE because Williams has failed

to state a claim and has already been given an opportunity to amend his complaint.

    New Orleans, Louisiana, this 15th day of March, 2012.

*Sarah Vance*

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE